Central Pasto Viejo, Inc., Demandante y Apelada, *v.* Roig
et al., Demandados y Apelantes.

No. 3205.—*Visto:* Abril 11, 1924. *Resuelto:* Junio 27, 1924.

Comunidad de Bienes—División de la Comunidad.—En la división de una finca
poseída en común, deben intervenir todos los condueños.

Id.—Retracto de Comuneros—Condiciones de Venta Estipuladas por el Con-
dueño—Derechos del Comunero Retrayente.—De acuerdo con la ley, sólo
podrá tener lugar el retracto cuando el condueño pueda subrogarse en lugar
del comprador "*con las mismas condiciones estipuladas en el contrato.*" La
ley garantiza los derechos de todos por igual. Es justa la preferencia que
se da al condueño. Pero sería injusto que por garantizar esa preferencia,
se limitara el derecho dominical de los otros condueños quedando reducido a
otorgar sólo aquella clase de contratos en que la subrogación en las mismas
condiciones fuera posible. El derecho a vender sus condominios en las me-
jores condiciones que tienen los condueños es absoluto. El derecho de re-
tracto que tienen también los condueños, está limitado por los términos mis-
mos de la ley. Sólo en el caso de alegarse y probarse fraude, o en el de
tratarse de una condición irracional, imaginaria, fuera del comercio de los
hombres, u otra situación semejante, podría tenerse la condición por no
puesta.

Id.—Id.—Id.—"A," comunero, vendió su condominio a "B" bajo la condición
esencial de que el comprador cedería en arrendamiento otra finca suya al
vendedor, quien traspasó el arrendamiento al comunero "C." *Se resolvió:*
que si bien antes del traspaso del arrendamiento tal vez "C" no estaba en
condición de retraer de "B", la dificultad quedó eliminada al adquirir el
arrendamiento, condición esencial de la venta de "A" a "B."

Sentencia de *Pablo Berga*, J. (Humacao), en una acción sobre re-
tracto legal, declarando con lugar la demanda en cuanto a dos
de los demandados y sin lugar en cuanto a los demás, sin costas.
*Confirmada.*

*González Fagundo & González, Jr., L. Pereyó* y *A. Aponte, Jr.*, abo-
gados de los apelantes; *H. G. Molina* y *R. Cuevas Zequeira*,
abogados de la apelada.

El Juez Presidente Señor del Toro, emitió la opinión del
tribunal.

Versa este pleito sobre retracto legal. La acción ejerci-
tada prosperó y la parte vencida, el demandado Roig, apeló
para ante este Tribunal Supremo. Señala en su alegato va-
rios errores que hemos estudiado cuidadosamente. Algunos
de ellos carecen de importancia. A nuestro juicio sólo exis-
ten tres cuestiones envueltas dignas de estudio, a saber: la
relativa a la división o indivisión de la finca; la referente a

si· dados los términos del contrato de venta celebrado por el demandado Roig, puede la demandante Central Pasto Viejo subrogarse en su lugar, y la consignación.

Comenzaremos por narrar los hechos en la forma más clara, corta y concreta que nos sea posible. Al discutir las cuestiones envueltas, nos referiremos a otros hechos que complementan la narración general que ahora haremos.

Se trata de una finca rústica denominada "Rosario," situada en el barrio de Antón Ruiz, del término municipal de Humacao. Según el registro tiene doscientas cuerdas. Según un plano presentado como prueba, 175 cuerdas y 789 milésimas de otra.

En 1903 dicha finca se inscribió en el Registro de la Propiedad de Humacao, a favor de doña Rosario Mandry y de sus siete hijos nombrados Juan, Arturo, María, Ana, Luis, Rafael y José Frías y Mandry ·por título de herencia del esposo y padre don Francisco Frías y Aguilar, una mitad a favor de la viuda y una catorce avas partes a favor de cada uno ·de los hijos, poseídas en común y proindiviso.

En el propio año de 1903 se inscribieron en el registro a favor de José Toro Ríos los derechos correspondientes a cinco de los hijos, a saber: Juan, Arturo, Ana, Luis y Rafael adquiridos por compra y además dos catorce avas partes·compradas también a doña Rosario, quedando así convertido Toro Ríos en dueño de siete catorce avas partes de la finca o sea la mitad de la misma.

En 1905 falleció doña Rosario sin otorgar testamento. Parece que nada se gestionó en cuanto a su herencia hasta 1923 en que fueron declarados herederos sus hijos Ana, Luis, Rafael, Arturo, Ramón, María y José. Son siete y los nombres coinciden con los consignados en el registro en 1903, excepto Ramón que seguramente es el Juan de 1903.

En 1908 el condómino José Frías y Mandry vendió a Luis Recurd casado con la condueña María, su participación en la finca, tanto la que le correspondía por herencia de su padre, una catorce avas parte, cuanto la que heredó de su madre

o sea la séptima parte de cinco catorce avas partes—se dice sexta parte. Presentado el título para su inscripción en el registro, sólo lo inscribió el registrador en cuanto a la venta del condominio de una catorce avas partes y no en cuanto al otro por constar todavía la inscripción a favor de doña Rosario.

En el propio año de 1908 Luis Recurd y su esposa María Frías y Mandry, comparecieron ante notario y vendieron a Miguel Bustelo y su esposa una finca rústica que describen como un predio de 69 cuerdas situado en Antón Ruiz del municipio de Humacao. Hay una cláusula en la escritura que dice:

"2° Que la finca descrita les pertenece en esta forma: parte, que adquirió la doña María por herencia de sus padres; y otra parte por compra a don José Frías y Mandry y otros, constando aún inscrita a nombre de doña Rosario Mandry y forma parte de otra finca de mayor número de cuerdas que poseía en común proindiviso con don José Toro Ríos, y si bien es cierto que la división material de la finca está hecha, no se ha otorgado aún la correspondiente escritura."

La palabra *otros* parece usarse para comprender los derechos de los *otros* hermanos adquiridos por herencia materna, excepto Rafael pues en cuanto a éste consta que en 1911 vendió su participación materna a Antonio Torres, que Torres, en 1912, la transfirió a la Borinquen Sugar Co., convirtiéndose finalmente en dueña la demandante Central Pasto Viejo.

La escritura de venta otorgada por los esposos Recurd-Frías a Bustelo, no se ha inscrito en el registro de la propiedad. Tampoco constan inscritas, aunque sí anotadas, las transferencias del condominio adquirido a virtud de herencia materna por Rafael Frías o sea el condominio perteneciente en la actualidad a la demandante.

En 23 de diciembre de 1922, los esposos Bustelo se comprometieron a vender al demandado Antonio Roig varias fincas. Una cláusula del contrato dice:

"Es condición esencial de este contrato que los esposos Bustelo venderán también al Sr. Roig la finca 'Rosario,' compuesta de 69 cuerdas, más o menos, radicada en el barrio de 'Antón Ruiz' de Humacao, al precio de $195.00 cada cuerda. Este precio de la venta está sujeto a la mensura que se haga del terreno, y se hace bajo la misma estipulación de evicción y saneamiento que se ha fijado para las otras fincas objeto del presente contrato.

"En consideración a la venta que hacen los esposos Bustelo al Sr. Roig de la finca 'Rosario', fijan dichos esposos como condición esencial de dicha venta, además de todas las estipulaciones precedentes, la condición de que el Sr. Roig le ceda a dichos esposos un lote de cien cuerdas de terreno que segregará el Sr. Roig de su finca 'Pitajaya,' de la Bejuca, frente a la carretera de Humacao a la Playa, cuya cesión se hará en arrendamiento por un término de diez años a razón de $7.00 por cuerda al año, y las contribuciones."

Enterada la demandante del contrato de 23 de diciembre de 1922, el 30 del propio mes y año radicó la demanda de retracto origen de este pleito y una moción que copiada en lo pertinente dice:

"Que en poder del Secretario de la Corte de Distrito de Humacao, la demandante ha consignado con esta fecha la suma de doce mil dollars, que cubre con exceso el importe en que ha sido vendida cierta parcela de terreno que la demandante intenta retraer mediante el ejercicio de esta acción de retracto legal.

"Que la venta de la parcela de terreno mencionada se realizó por la suma de $11,018.09; y la demandante calcula $981.91 el importe de los gastos del contrato y de cualquier otro desembolso legítimo que pueda haber sido hecho por los demandados.

"Por lo que a la corte suplica, se sirva admitir la demanda aludida y tener por hecha la consignación y depósito de la cantidad de doce mil dollars, dando curso al asunto en la forma dispuesta por la ley."

La corte tuvo por hecha la consignación y el pleito siguió adelante hasta que se dictó la sentencia apelada en agosto 13 de 1923 declarando la demanda con lugar.

Con respecto a cuál es la ley reguladora de este caso no

hay disputa entre las partes, todas convienen en que está contenida en los artículos 1424 y 1425, que dicen:

"Art. 1424.—El retracto legal es el derecho de subrogarse, con las mismas condiciones estipuladas en el contrato, en lugar del que adquiere una cosa por compra o dación en pago.

"Art. 1425.—El copropietario de una cosa común podrá usar del retracto en el caso de enajenarse a un extraño la parte de todos los demás condueños o de algunos de ellos.

"Cuando dos o más copropietarios quieran usar del retracto, sólo podrán hacerlo a prorrata de la porción que tengan en la cosa común."

La controversia está en la apreciación de los hechos y en la interpretación de la ley aplicada al caso concreto debatido.

¿Existe un estado de indivisión en la finca "Rosario"? La parte demandante sostiene que sí y la corte sentenciadora le dió la razón. La parte demandada sostuvo en la corte inferior e insiste ahora en apelación en que la finca fué materialmente dividida entre los condueños.

Si examinamos las constancias del registro, resulta de ellas la finca poseída en común y proindiviso. Ya nos hemos referido a la inscripción a favor de doña Rosario Mandry y de sus hijos y a las ventas de ciertos condominios y ahora diremos que, según la certificación del registrador aportada como prueba, el último asiento del registro que guarda relación con la finca es de fecha 14 de agosto de 1922 y se refiere a la inscripción de un contrato de arrendamiento celebrado entre José Toro Ríos y su esposa de una parte y la Central Pasto Viejo de la otra. En él se consigna: * * * "Se halla afecta en cuanto a la mitad indivisa a la hipoteca . . . . Don José Toro Ríos . . . . tiene inscrita a su favor la mitad indivisa . . . . dió en arrendamiento el expresado condominio de la mitad indivisa. . . . ."

Siendo ello así ¿cómo se explica que al vender los esposos Recurd a los esposos Bustelo y éstos a los esposos Roig en vez de referirse a condominios se describiera y vendiera

separadamente una finca de sesenta y nueve cuerdas? Ya hemos dicho que los documentos en que tales contratos constan no se han inscrito en el registro. La explicación de tal hecho aparece de la prueba practicada así:

La propia parte demandante presentó como prueba un plano, admitido por la parte demandada, que se levantó en abril de 1912 por el Agrimensor M. Fuentes Morales. Al pie del mismo consigna el agrimensor lo que sigue:

"Plano de la finca ROSARIO—Pertenece: a Don José Toro Ríos la parte de 108 cuerdas y 881 milésimas de otra que se halla al Este de la línea divisoria A. B. C. y a don Miguel Bustelo y don Antonio Torres la parte de 66 cuerdas y 968 milésimas de otra que se halla al Oeste de dicha línea. . . . ."

A juzgar por el plano, la división fué practicada en dos porciones: una para Toro Ríos y otra para Bustelo y Torres.

Llamado a declarar como testigo el agrimensor Fuentes reconoció el plano levantado por él y dijo que hizo el trabajo por orden de don José Toro Ríos quien le pagó sus honorarios; que el Sr. Bustelo para nada intervino; que la "línea divisoria" a que se refiere en su plano se trazó siguiendo una línea de espeques y alambres que existía.

Y declarando como testigo el demandado Toro Ríos reconoció cierto documento constante en un libro copiador de su propiedad, que en lo pertinente dice:

"En la Ciudad de Humacao, P. R., a los veintinueve días del mes de octubre, de una parte doña María Frías y Mandry, casada con don Luis Recurt, ambos mayores de edad y de esta vecindad y de la otra parte don José Toro Ríos de idéntica circunstancias personales, convienen en la celebración de esta escritura, digo contrato privado, de compromiso de división de fincas rústicas, bajo las bases siguientes:

"1. Doña María Frías se compromete a tomar la parte que a ella le corresponde de la finca llamada 'Rosario,' en la parte superior de la misma, de tal manera que resulta situada en la parte Oeste de una línea divisoria que se tirará desde el camino de Antón Ruiz en lo más cerca posible de la colindancia de la finca de

.don José Rodríguez y que pasando por la parte Este de la casa, .termine en la colindancia de don Emilio Faura. Esta línea será proyectada como recta y una vez pasada la casa, se formará un triángulo hacia el Oeste o hacia el Este, según que el polígono irregular sea mayor o menor que lo que corresponda a doña María de la finca.

"2. En este mismo polígono estará también comprendido lo que corresponda a los herederos de doña Rosario Mandry y cuyas participaciones no hubieran sido cedidas a don José Toro Ríos.

"La casa quedará en el pedazo de doña María sin retribución alguna.

"El resto de dicha finca corresponderá a su otro condueño D. José Toro Ríos."

Entonces fué interrogado por el abogado del demandado Roig así:

"¿En virtud del documento éste, usted sabe si estaba en posesión material de la parcela de la finca ésa la persona que hizo a usted el documento?—No me consta mucho, porque yo tenía cedida en arriendo la participación mía a varias Centrales, que era entonces la Puerto Rico Sugar Company, luego a la Borinquen Sugar Company y ahora a la Pasto Viejo.

"¿Pero usted sabe si en virtud del documento éste la señora que contrató con usted estaba en posesión material de la finca?— Doña María Frías sí."

Después de varias objeciones y excepciones, el testigo contestó la siguiente pregunta del abogado de la demandante, así:

"¿Sabe usted si ella tenía el título para todo el resto de la finca adjudicada a usted?—En absoluto no, yo puedo refrescar mi memoria con la fecha en que cada uno otorgara la escritura con referencia a esa finca, si es que me muestran algún documento, o algo así, pero por lo demás no recuerdo."

Es indudable que la prueba demuestra que hubo un principio de división y que en cuanto a los condueños Toro Ríos y esposos Recurd seguramente no hubiera habido dificultad, pero la prueba también demuestra que existía otro condueño, Torres, que no intervino en el contrato—íbamos a consig-

nar el año de su celebración, pero no aparece de los autos —entre Toro Ríos y los esposos Recurd, ni tampoco en el plano levantado por encargo de Toro Ríos en 1912. Y no es posible dividir válidamente una finca poseída en común sin la intervención de todos los condueños.

Siendo ello así, es necesario concluir que la corte sentenciadora no erró al apreciar la evidencia como demostrativa de que el estado de indivisión de la finca "Rosario" existía y por lo tanto que la demandante había probado su condición de copropietaria de una cosa común que le daba derecho a usar del retracto al ser, como fué enajenada en este caso, a un extraño, el demandado Roig.

Veamos ahora si la demandante puede o nó subrogarse en lugar de Roig, el comprador, dadas las condiciones en que fué celebrado el contrato de venta entre Roig y Bustelo.

En cuanto a ese extremo la corte sentenciadora, en su opinión, dice:

"5. Y resta ahora considerar la cuestión referente a la 'Condición esencial' que aparece en el contrato privado de 23 de diciembre de 1922 entre los esposos Bustelo-Rodríguez y Roig-Guzmán en relación con la finca Rosario objeto del presente pleito. Se establece por los demandados Roig como defensa especial en su contestación la expresada condición esencial que se alega nunca podría ser cumplida por la demandante Central Pasto Viejo, Inc. Ciertamente que tal condición esencial sería imposible de ser cumplida por la demandante, porque ella depende de la acción del comprador Roig Torrellas, y esta corte estima que tal condición esencial debe tenerse como no puesta en el referido contrato a los efectos de este pleito. Admitir en casos de esta naturaleza que se aleguen como existentes condiciones entorpecedoras del retracto, sería hacer ilusorio el derecho que concede la ley al retrayente. Un contrato de la naturaleza e importancia del que ha dado lugar a este litigio, parece propio que se hubiera consignado con las solemnidades de una escritura pública a fin de que no pudiera levantarse duda alguna con respecto a la certeza de sus diferentes estipulaciones. La prueba, pues, en estos casos, debe ser robusta. Y parece a la corte que el cumplimiento de tal condición esencial, dadas las circunstancias del caso, no era una verdadera causa para la venta de la finca Rosario,

pues nada se ha hecho en ese sentido: no se han segregado los te-
rrenos de la finca Pitajaya, ni se ha otorgado la escritura pública
inscribible en el registro de la propiedad, siendo de notarse en este
caso que para el otorgamiento de la expresada escritura, y por ella
de la fecha en que debía empezar a regir el arrendamiento, y en
donde debía consignarse la condición de venta, no se hubiera espe-
cificado fecha alguna y quedara así indefinida.  Sin embargo, en
cuanto a los terrenos de la finca Rosario el demandado Roig Torre-
llas tomó posesión de los mismos allá por diciembre de 1922, según
declaró su apoderado don Antonio A. Roig.''

Creemos que la corte de distrito fué demasiado lejos.
De acuerdo con la ley, sólo podrá tener lugar el retracto
cuando el condueño pueda subrogarse en lugar del comprador
*"con las mismas condiciones estipuladas en el contrato."*  La
ley garantiza los derechos de todos por igual.  Es justa la
preferencia que se da al condueño.  Pero sería injusto que
por garantizar esa preferencia, se limitara el derecho domini-
cal de los otros condueños quedando reducido a otorgar sólo
aquella clase de contratos en que la subrogación en las mis-
mas condiciones fuera posible.  El derecho a vender sus con-
dominios en las mejores condiciones que tienen los condue-
ños, es absoluto.  El derecho de retracto que tienen también
los condueños, está limitado por los términos mismos de la
ley.  Sólo en el caso de alegarse y probarse fraude, o en el
de tratarse de una condición irracional, imaginaria, fuera
del comercio de los hombres, u otra situación semejante, po-
dría adoptarse el criterio sustentado por el juez sentencia-
dor y tenerse la condición por no puesta.  Pero ése no es
aquí el caso, en verdad.

Ahora bien, aunque sea como es necesario concluir que
la corte de distrito erró al exponer el fundamento que tuvo
para resolver el extremo esencial indicado, su error no lleva
consigo la revocación de la sentencia porque ésta se sos-
tiene por otro fundamento, como veremos en seguida.

La parte demandante presentó como prueba una escritura
otorgada el 23 de mayo de 1923, después de iniciado este
pleito, por virtud de la cual Bustelo cedió sus derechos y

acciones derivados del contrato por el cual Roig adquirió de Bustelo entre otras la propiedad de que se trata en este pleito, existiendo en dicho contrato una cláusula que dice:

"Constituye el precio o consideración de este contrato, la convenida suma de SETENTA Y OCHO MIL CUATROCIENTOS CUARENTA DÓLARES, repartidos en la siguiente forma: Dos mil dólares como prima o consideración por la cesión de derechos y acciones, arrendamiento y opción de compra que los cónyuges Bustelo-Rodríguez hacen a favor de la Central Pasto Viejo Incorporada, cuya cantidad dichos esposos Bustelo-Rodríguez, reciben en este acto, de contado y a su entera satisfacción, por lo que le otorgan a dicha corporación el más formal recibo y eficaz carta de pago por dicha suma;"

Bustelo tenía derecho a vender y vendió a Roig en las condiciones que considerara más ventajosas para él. La Central Pasto Viejo tenía derecho a retraer siempre que pudiera subrogarse en las mismas condiciones. En cuanto al precio en metálico, no había dificultad. La dificultad existía en cuanto a la condición especial. Claramente la Central Pasto Viejo no estaba en condiciones de dar en arrendamiento a Bustelo el terreno que pertenecía a Roig, pero desde el momento en que compró a Bustelo su derecho al arrendamiento, eliminó la dificultad, y su derecho al retracto debe serle reconocido.

Examinemos, por último, la cuestión relativa a la consignación. El demandado apelante sostiene que no fué bien hecha, porque el valor de la propiedad vendida era superior a los doce mil dólares depositados en poder del Secretario de la Corte. Ya hemos dicho que existe una diferencia en cuanto a la verdadera cabida de la finca, y si se toma por base la que indica el plano que fué aceptado por la parte demandada, la cantidad consignada parece suficiente. Hay otra circunstancia que favorece la acción tomada por la demandante y es que la venta de Bustelo a Roig no fija con absoluta seguridad la cabida y sujeta el precio a una mensura del terreno que debería practicarse en el futuro. Fi-

nalmente existe el contrato entre la demandante y Bustelo de 23 de mayo de 1923 a que se ha hecho referencia.

Debe *confirmarse* la sentencia apelada.

El Juez Asociado Sr. Wolf no intervino en la resolución de este caso.