AMÉRICA ORTIZ ROMEU, recurrente, *v.* EL REGISTRADOR DE LA PROPIEDAD DE SAN GERMÁN, recurrido.

Número 1336.
*Sometido*: 17 de abril de 1961. *Resuelto*: 26 de abril de 1961.

---

502

*Carlos García Méndez,* abogado de la recurrente; el Registrador recurrido compareció por escrito.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

Por escritura número 2 de fecha 7 de mayo de 1938 otorgada ante el notario don Vicente Hita, Jr., doña América Ortiz Romeu adquirió, a título de donación, un condominio

proindiviso en varias fincas. Los otros condominios fueron donados a sus otros hermanos. En dicha escritura los donantes—esposos don Juan Cancio Ortiz y doña Matilde Romeu, padres de la recurrente—establecieron la condición de "preferirse mutuamente los condueños en caso de venta o gravamen de sus respectivas participaciones a menos que ninguno de éstos esté interesado en tal compra o gravamen". Posteriormente se dividió la comunidad existente en dichas fincas y se adjudicó a la recurrente, en pago de su participación, una finca de cuarenta y cinco cuerdas y dos tercios sita en el barrio Palmarejo de Lajas. Al practicarse la inscripción de la escritura de división de comunidad, el Registrador hizo constar que dicha finca estaba sujeta a la condición transcrita anteriormente.

La recurrente presentó una instancia al Registrador de la Propiedad de San Germán solicitando se cancelara esta condición de la finca que le había sido adjudicada en la división de la comunidad, por los siguientes motivos:

"A. Porque tal condición, aunque erróneamente puesta al inscribirse los condominios que adquirió por herencia la compareciente según la escritura No. 2 antes relacionada, quedó de hecho cancelada y sin valor alguno al dividirse la comunidad relacionada con dichas fincas donadas y adjudicarse a la compareciente la parcela antes descrita. Tal condición se refería a la enajenación o gravamen de las participaciones donadas y era a favor de los copartícipes, y habiéndose disuelto la comunidad dejaron de existir tales participaciones y copartícipes.

"B. Porque, tal condición por ser una personal, no debió haberse consignado en ese Registro, y procede su cancelación total de acuerdo con lo dispuesto por el Honorable Tribunal Supremo de Puerto Rico en los casos de Rullán v. Registrador, 67 D.P.R. 702 y López v. Registrador, 67 D.P.R. 962."

El señor Registrador denegó la cancelación solicitada, y al efecto extendió una nota denegatoria que lee como sigue:

"DENEGADA la cancelación de la condición a que se refiere el documento que precede, por observar que no consta del Registro

ni se acredita por documento alguno, que las partes interesadas en dicha condición hayan renunciado al derecho de preferencia mutua en caso de venta o gravamen de sus respectivas participaciones, por lo que en su lugar tomo anotación preventiva por el término legal a favor de la interesada de su derecho, al folio 1 v. del tomo 69 de Lajas, finca No. 2341, por nota al margen de su inscripción primera."

Contra la nota denegatoria se ha recurrido a este Tribunal.

Repetidamente hemos resuelto que al Registro de la Propiedad sólo tienen acceso los derechos reales que recaigan sobre bienes inmuebles, salvo los casos en que por ley otra cosa se disponga. Parece claro que los derechos personales no son inscribibles. Roca Sastre, Derecho Hipotecario (Ed. 1954) vol. II, pág. 207; De Casso, Derecho Hipotecario o del Registro de la Propiedad (4a. Ed., 1951), pág. 289; Téllez Miquélez, Legislación Hipotecaria (1949), pág. 45. Es por eso que el artículo 28 del Reglamento Hipotecario (30 L.P.R.A. sec. 858) específicamente dispone que "La obligación de transmitir a otro el dominio de cualquier inmueble o derecho real, o de constituir sobre uno u otro algún derecho de la misma índole, no estará sujeta a inscripción. Tampoco lo estará la obligación de celebrar en lo futuro cualquiera de los contratos comprendidos en los artículos anteriores, a menos que en uno u otro caso sea garantizada dicha obligación personal por medio de otra real".[1]

En *Rullán v. Registrador*, 67 D.P.R. 702 (1947) resolvimos que procedía la cancelación de una mención relacionada en la inscripción de un inmueble de una cláusula que disponía que "en todo tiempo en que . . . resuelva vender la parcela

---

[1] El Reglamento de la Ley Hipotecaria de España (1944) dispone en su artículo 9 que "No son inscribibles la obligación de constituir, transmitir, modificar o extinguir el dominio o un derecho real sobre cualquier inmueble, o la de celebrar en lo futuro cualquiera de los contratos comprendidos en los artículos anteriores, ni en general cualesquiera otras obligaciones o derechos personales, sin perjuicio de que en cada uno de estos casos se inscriba la garantía real constituida para asegurar su cumplimiento, o se tome anotación, cuando proceda, de conformidad con el artículo 42 de la Ley."

objeto de esta compraventa estará obligado a ofrecérsela en venta a los vendedores, por igual precio al que paga por la misma", por tratarse de una mera promesa de vender. Añadimos que tal promesa constituye un derecho personal que no ha debido mencionarse en forma alguna en el Registro. Cf. *Rossy* v. *Tribunal Superior*, 80 D.P.R. 729 (1958). Igualmente, en *López* v. *Registrador*, 67 D.P.R. 962 (1947), sostuvimos que por tratarse de un derecho personal a cuya inscripción el usuario no tenía derecho, era cancelable una mención de una cláusula de un contrato de compraventa de un teatro al efecto de que "el palco del piso bajo que aparece actualmente ocupado con el número . . . seguirá siendo ocupado como de costumbre por el vendedor . . . y su familia." Más recientemente, por entender que eran derechos reales, indicamos que no podía accederse a la cancelación de restricciones inscritas limitando el uso de ciertos solares dentro de una urbanización para fines comerciales y recreativos, en tanto eran beneficiosas para los restantes solares residenciales. *Baldrich* v. *Registrador*, 77 D.P.R. 739 (1954).

██ Ahora bien, como indica el hipotecarista don Jerónimo González, "existe un grupo de figuras jurídicas de tipo indiferenciado, las cuales, deberán ser arrastradas al campo obligacional o al de los derechos reales." (²) Esta posición parte del supuesto—ya aceptado en Puerto Rico en el mencionado caso de *Baldrich,* supra—de que "la legislación vigente no contiene una categoría agotadora de derechos reales, pudiendo los interesados regular otros de igual naturaleza que los enumerados por la ley, y *modificar desde luego o en lo futuro algunas de las facultades del dominio*". (³) No puede ignorarse la existencia de ciertos derechos que, dependiendo de su configuración, participen de naturaleza real o personal. Es lo que se ha denominado "zonas intermedias de interfe-

---

(²) Sobre *La inscripción de montes públicos*, Revista Crítica de Derecho Inmobiliario (1925) pág. 275.

(³) Resolución de la Dirección General de los Registros de 1 de marzo de 1939.

rencia o de claroscuro jurídico, en que lo personal se filtra sutilmente, como una fosforescencia, a través de lo real, o en que lo real refuerza con su potencialidad *erga onnes* los vínculos obligatorios".[4]    Entre estos derechos se encuentra el de tanteo.[5]

Expuestos brevemente los principios que deben considerarse a los fines de resolver el problema planteado, réstanos únicamente determinar si la cláusula o condición cuya cancelación se solicita envuelve un derecho real de tanteo convencional o una modificación de la facultad de disposición del dominio que, por participar de naturaleza real, era inscribible.

Para que el derecho de tanteo convencional pueda considerarse como derecho real es necesario que en el título de su constitución se le configure como tal, y para ello es preciso que el titular del derecho no solo tenga a su favor la preferencia para adquirir el inmueble, sino que pueda perseguirlo en manos de cualquier persona que adquiera del obligado. Es decir, que del título surja que cualquier enajenación no podrá considerarse como definitiva en lo que respecta al titular del derecho de adquisición.[6]    Si se examina ligeramente la condición impuesta por los donantes, y aún considerando que estuviéramos ante una modalidad imperfecta de tanteo, se observará inmediatamente que la preferencia contenida en virtud de sus términos no alcanza a terceros y que simplemente engendra vínculos obligacionales de naturaleza personal entre los comuneros.    Por otro lado, si hubiere alguna duda sobre el particular, la exégesis se pronuncia en favor de una interpretación restrictiva.    En resolución de

---

[4] Ramón de la Rica y Arenal, Comentarios al Nuevo Reglamento Hipotecario, Vol. II (Ed. 1949) pág. 25.

[5] Castán define el tanteo como "el derecho de *preferencia* que una persona tiene para la adquisición de una cosa, en el caso de que el dueño quiera enajenarla". (Véase, Casso y Cervera, Diccionario de Derecho Privado, Vol. II, pág. 3758.)

[6] Sobre el tanteo como derecho real o personal, véase, Ramón Roca Sastre, Derecho Hipotecario, (5a. edición, 1954) Vol. III, págs. 5 a 23.

28 de enero de 1927 de la Dirección General de los Registros, [7] se dice: "Contra la admisión de derechos reales modelados sobre el tipo de un derecho de preferencia . . . militan gravísimas razones que imponen igualmente una interpretación restrictiva . . ."

■ Por otro lado, considerada dicha cláusula como una condición limitativa de *ius disponendi* en el inmueble, tampoco se justifica su supervivencia registral, una vez desaparecido el estado de indivisión o comunidad de bienes, que le dio aliento. Como podrá verse, los donantes simplemente establecieron una preferencia recíproca entre los condueños en caso de venta o gravamen [8] de *participaciones*, con el propósito de evitar la entrada de extraños [9] en la comunidad que entre los hermanos se creaba en virtud de la donación. Pero terminada la comunidad de bienes en el inmueble que nos ocupa y en los demás que fueron objeto de donación, desaparece la razón de ser de la preferencia por *expresión de voluntad* de los únicos interesados. [10] La renuncia de

[7] Revista de Derecho Privado, vol. XIV (1927) pág. 106.

[8] Obviamente por gravamen se quiso significar enajenación.

[9] A medida que uno se compenetra del propósito de los donantes— conservación de la heredad entre los miembros de la familia—resulta la improvidencia de la preferencia con vista de las disposiciones del Código Civil sobre el derecho de retracto legal entre comuneros, que logra el mismo fin y aun cuando los bienes, o participación en éstos, hayan pasado a posesión de un tercero. Art. 1412 del Código Civil (31 L.P.R.A. sec. 2922; *Rosaly* v. *Ríos*, 63 D.P.R. 836 (1944); *Central Pasto Viejo* v. *Roig*, 33 D.P.R. 451 (1924), confirmado en 6 F.2d 106, (C.C.A. 1, 1925).

[10] Véanse las siguientes resoluciones de la División General de Registros publicadas en la Revista de Derecho Privado en el volumen y página que se indicará: 31 de diciembre de 1930 (Vol. XVIII, pág. 249); 7 de mayo de 1929 (Vol. XVI, págs. 342, 344) y 7 de noviembre de 1927 (Vol. XV, pág. 62). Uno de los efectos de la división de la cosa común con relación a las personas de los condueños es "entenderse, por ministerio de la ley, que cada uno de los partícipes en la cosa común ha poseído exclusivamente durante la indivisión la parte que al disolverse le correspondiera". Guaroa Velázquez, Los Derechos Reales Principales Según la Legislación y La Jurisprudencia Puertorriqueñas, (Ed. 1937) pág. 149. Véanse además, J. Beltrán de Heredia, La Comunidad de Bienes en Derecho Español (Ed. 1954) págs. 358 a 369; Antonio M. Borrel y Soler, El Dominio Según el Código Civil Español (Ed. 1948) págs. 232 et seq.

las partes interesadas a que se refiere la nota denegatoria sería completamente superflua por la manifestación elocuente de éstas al proceder a dividir la comunidad y hacerse adjudicaciones específicas en pago de su interés respectivo en todos los bienes poseídos en proindiviso.

*Por las razones expuestas se revocará la nota recurrida.*

