EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Zaida L. González Román | |
| Peticionaria | Certiorari |
| v. | 2004 TSPR 199 |
| Sucesión Cruz Cruz | 163 DPR _____ |
| Recurrida | |

Número del Caso: CC-2003-979

Fecha: 10 de diciembre de 2004

Tribunal de Circuito de Apelaciones:

Circuito Regional IV

Juez Ponente:

Hon. José M. Aponte Jiménez

Abogado de la Parte Peticionaria:

Lcdo. Iván Crespo Arroyo

Abogado de la Parte Recurrida:

Lcdo. Hilton J. García Aguirre

Materia: Incumplimiento de Contrato, Daños y Perjuicios

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Zaida L. González Román

    Peticionaria

                             CC-2003-979     Certiorari

       v.

Sucesión Cruz Cruz

    Recurrida

Opinión del Tribunal emitida por el Juez Presidente señor Hernández Denton

San Juan, Puerto Rico, a 10 de diciembre de 2004.

Nos corresponde determinar los derechos y obligaciones, si algunos, que surgen de cierto contrato de arrendamiento en el que se incluye una cláusula que le concede al arrendatario el derecho de preferencia para adquirir el inmueble arrendado en la eventualidad de que el arrendador decida enajenarlo.

I.

Los hechos medulares no están en controversia. Allá para el mes de mayo de 1999, el Sr. Antonio Cruz Cruz y las Sras. Generosa Cruz Cruz, Luz María

Acevedo Cruz y Luz María González Cruz (en adelante la Sucesión Cruz Cruz) le arrendaron a la Sra. Zaida Luz González Román un local comercial de su propiedad localizado en Aguadilla, Puerto Rico.[1] Mediante dicho contrato de arrendamiento, entre otras cosas, la Sucesión Cruz Cruz le concedió a la señora González Román el derecho de adquirir, con carácter preferente, el inmueble arrendado en la eventualidad de que estos decidiesen enajenarlo. A tales efectos, se estableció en la cláusula "F" del contrato en cuestión lo siguiente:

> F) **Si en el futuro los arrendadores decidieran vender la propiedad arrendada convienen éstos en dar la primera opción de compra a la arrendataria.** El precio de venta en dicha eventualidad será el que establezca un tasador escogido por ambas partes. Esta tasación se llevará a cabo en o antes de seis meses desde la fecha de este contrato y el costo será pagado por los arrendadores.(Énfasis suplido.)

Transcurridos aproximadamente cinco (5) meses desde la fecha en que la señora González Román comenzó a disfrutar de la referida propiedad en calidad de arrendataria, los miembros de la Sucesión Cruz Cruz decidieron vender la propiedad arrendada. A tales efectos, el señor Cruz Cruz, en representación de los miembros de la Sucesión, le solicitó a la señora

---

[1] Cabe destacar que la referida propiedad se encontraba en un terreno que pertenecía a la Sucesión Cruz Cruz en el que, además, enclavaba una residencia familiar. En el contrato de arrendamiento no se incluyó el resto de la propiedad y o las estructuras.

González Román que comenzase las gestiones para la tasación de la propiedad. La propiedad fue tasada en $136,600.00 dólares.

Recibida la tasación, el señor Cruz Cruz le informó a la señora González Román que la Sucesión no estaba dispuesta a vender su propiedad al precio de tasación. Contrario a lo pactado, le informaron que el precio de venta sería el de $140,000.00 dólares. En ese momento, la señora González Román indicó que aceptaría pagar dicho precio si se le realizaban ciertos arreglos sustanciales a la propiedad. A solicitud del señor Cruz Cruz, la señora González Román preparó un contrato de opción de compra que recogía sus exigencias. Oportunamente, el señor Cruz Cruz le notificó a la señora González Román que los miembros de la Sucesión no aceptaban el contrato como estaba redactado.

Meses más tarde, mediante contrato de promesa de compraventa, la Sucesión Cruz Cruz se comprometió a venderle todas sus propiedades, incluida aquella arrendada a la señora González Roman, al Sr. Héctor Hernández y a su esposa Enibet Nieves. No obstante, en dicho contrato se especificó que se honraría el contrato de arrendamiento de la señora González Román.

En desacuerdo con esta situación, la señora González Román presentó ante el Tribunal de Primera Instancia una demanda de incumplimiento de contrato y daños y perjuicios contra la Sucesión Cruz Cruz. En

síntesis, solicitó del tribunal que obligara a los demandados a venderle la propiedad conforme a los acuerdos suscritos en el contrato de arrendamiento. A dicha solicitud, la Sucesión Cruz Cruz se opuso. Luego de varios incidentes procesales, el Tribunal de Primera Instancia declaró sin lugar la demanda. Dicho foro sostuvo que el contrato suscrito por las partes no gozaba de las características de un contrato de opción por lo que no podía obligar a la Sucesión Cruz Cruz a cumplir con el mismo[2]. Concluyó que las partes sólo pactaron el arrendamiento de la referida propiedad por un periodo de cinco (5) años.

Inconforme, la señora González Román acudió mediante solicitud de *certiorari* ante el antiguo Tribunal de Circuito de Apelaciones (en adelante Tribunal de Apelaciones). Dicho foro, aun cuando determinó que entre las partes se había perfeccionado un contrato de opción de compra, confirmó el dictamen emitido por el foro de instancia por entender que las

---

[2]    Se basó en que alegadamente las conversaciones contractuales para otorgar el mismo se llevaron acabo por un sólo miembro de la Sucesión Cruz Cruz ( el señor Antonio Cruz) sin contar con el consentimiento de los demás miembros.

Es menester señalar que, contrario a lo resuelto por el foro de instancia, del expediente que obra en nuestro poder se desprende que los miembros de la Sucesión Cruz Cruz estuvieron informados, en todo momento, de las gestiones realizadas por el Sr. Antonio Cruz Cruz. Tan es así, que todos comparecieron al otorgamiento del contrato en cuestión y con su firma validaron el contenido del mismo.

negociaciones entre las partes con posterioridad al otorgamiento del referido contrato extinguieron las obligaciones derivadas de éste.

Insatisfecha, la señora González Román acudió ante nos. En esencia, sostiene que el Tribunal de Apelaciones incidió al interpretar los derechos y obligaciones que surgían del contrato de arrendamiento, en particular de su cláusula (F), y por ende, al determinar que las negociaciones que se produjeron entre las partes con posterioridad a otorgar el mencionado contrato extinguieron las obligaciones derivadas de éste. Acordamos expedir el auto de *certiorari* solicitado. Con el beneficio de las comparecencias de ambas partes, resolvemos.

## II

### A.

Contrario a lo afirmado por la señora González Román y por la propia Sucesión Cruz Cruz, y a lo resuelto por los tribunales inferiores, la cláusula (F) del contrato objeto de litigio no le otorga a la señora González Román un derecho de opción a compra sobre el local arrendado por ésta a la Sucesión Cruz Cruz. Nos explicamos.

Un análisis de la mencionada cláusula contractual no revela que se le haya concedido a la señora González Román, por tiempo fijo y en determinadas condiciones, la facultad, **exclusivamente a su arbitrio,** de decidir

respecto a la compra del local comercial que le arrendaron. Mayagüez Hilton Corp. V. Betancourt, res. el 19 de febrero de 2002, 2002 TSPR 23; Irizarry v. García Cámara, res. el 27 de noviembre de 2001, 2001 TSPR 161; Atocha Thom McAn, Inc. v. Registrador, *supra*, a la págs. 583-584 (1989); Rosa Valentín v. Vázquez Lozada, 103 D.P.R. 796, 806 (1975); Del Toro v. Blasini, 96 D.P.R. 676, 681 (1968). **El derecho a optar para comprar la propiedad dependía de que el concedente del derecho, en este caso la Sucesión Cruz Cruz, decidiese enajenar el referido inmueble.** Así claramente se desprende de la cláusula (F) del contrato en cuestión cuando establece que "[s]i en el futuro los arrendadores [la Sucesión Cruz Cruz] decidieran vender la propiedad arrendada convienen éstos en dar la primera opción de compra a la arrendataria [la señora González Román]". Por no estar en manos de la señora González Román la facultad para decidir si se realizaba o no el negocio, no podemos concluir que estamos ante un contrato de opción de compra. Estamos más bien ante un *derecho de tanteo* instituido en un contrato de arrendamiento. Veamos.

B.

**El tanteo es el derecho de preferencia que una persona tiene para la adquisición de una cosa determinada, en caso de que su dueño quiera enajenarla, y por consiguiente, la facultad que le asiste para que, en este último caso, se lo manifieste así al**

**propietario, indicándole el precio y condiciones de la enajenación, si no se han pactado previamente.** *Véase*, Ramón Badenes Gasset, *La Preferencia Adquisitiva en el Derecho Español (Tanteo, Retracto, Opcion)*, Ed. Bosch, 1958, pág. 7; Jaime Santos Briz, *Derecho Civil*, Tomo II, Editorial Revista de Derecho Privado, 1973, págs. 700-702; José Puig Brutau, *Fundamentos de Derecho Civil*, Tomo III, Vol. III, Ed. Bosch, 1983, págs. 394-397; Miguel Coca Payeras, *Tanteo y Retracto, Función Social de la Propiedad y Competencia Autonómica*, Ed. Publicaciones del Real Colegio de España, 1988, pág. 34. Se trata de una obligación unilateral personal mediante la cual el dueño de la cosa viene obligado a notificar al titular del tanteo la enajenación proyectada. De esta manera, se faculta al titular del derecho para decidir si adquiriere o no una cosa con preferencia a los demás interesados, si algunos, en adquirir la misma. Manuel Albaladejo, *Curso de Derecho Civil Español*, Tomo III, Ed. Bosch, 1982, pág. 483.

Como se puede apreciar, por su naturaleza, el derecho de tanteo opera previo a la enajenación y faculta a su titular a adquirir una cosa que va a ser enajenada por su propietario, con preferencia a cualquier otro, por el mismo precio que éste abonaría, es decir por el tanto ofrecido a un tercero. Miguel Coca Payeras, *Tanteo y Retracto, Función Social de la Propiedad y Competencia Autonómica, supra.* **A diferencia**

**del derecho de opción donde la iniciativa de aceptar es del optante; en el derecho a tanteo, el titular mismo no tiene la iniciativa, sino que ha de esperar que la haya tomado la otra parte; entiéndase, que el concedente del derecho haya decidido enajenar**. Jose Puig Brutau, *Fundamentos de Derecho Civil, supra,* a las pags. 497-498.

Según el Profesor José Ramón Vélez Torres en su obra *Curso de Derecho Civil*,[3] el tanteo puede ser convencional o legal. En cuanto al primero de los casos (convencional), el cual nos ocupa, señala que:

> [E]l Código guarda silencio, pero la doctrina se pronuncia a favor de la posibilidad de crearlo a base de lo que dispone el artículo 1207, 31 LPRA 3372, al efecto de que los contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que no sean contrarios a las leyes, a la moral, ni al orden público. Así, podrá imponerse, voluntariamente, un gravamen sobre una cosa, en virtud del cual, al pretender enajenarla su dueño, tendrá preferencia para la adquisición la persona a la que se le concedió el derecho que constituye el gravamen. *Id*.

El tanteo, al igual que los otros derechos de adquisición preferente como lo serían el retracto y la opción, se consideran derechos personales que sólo engendra vínculos obligacionales entre las partes contratantes; es decir, nacen y se desenvuelven fuera del Registro de la Propiedad. Empero, cuando éstos se

---

[3] José Ramón Vélez Torres en su obra *Curso de Derecho Civil*, Tomo II, Ed. Universidad Interamericana de Puerto Rico, 1997, pág. 463.

inscriben, porque así las partes lo han pactado expresamente, adquieren categoría de derechos reales y, desde entonces afectan a terceros. <u>Ortiz v. Registrador,</u> 82 D.P.R. 501 (1961); véase además, Luis Rafael Rivera Rivera, *Derecho Registral Inmobiliario Puertorriqueño*, 1ra. Edición, Jurídica Editores, 2000, pág. 401- 404.

Vista la normativa aplicable, veamos los hechos del caso de autos.

### III

Como mencionamos anteriormente, en el presente caso se le concedió a la señora González Román el derecho preferente de adquirir el inmueble que le había arrendado los miembros de la Sucesión Cruz Cruz <u>en la eventualidad de que éstos decidieran enajenarlo</u>. Es decir, el surgimiento de la obligación dependía exclusivamente de la voluntad del concedente del derecho. Dicha condición fue cumplida alrededor de cinco (5) meses después de que la señora González Román comenzará a disfrutar del inmueble, cuando el señor Cruz Cruz le manifestó su interés en vender la propiedad. Desde ese momento, su derecho de tanteo era totalmente exigible conforme a derecho.

### IV.

Adjudicado lo anterior, resta por examinar si la Sucesión Cruz Cruz cumplió con su obligación según se estipuló en el contrato. Veamos.

Según se desprende del expediente que obra en nuestro poder, una vez la Sucesión Cruz Cruz manifiesta su intención de vender la propiedad, la señora González Román debía tasar la propiedad. El precio de tasación constituiría **por voluntad de las partes** el precio de venta.[4] Realizado dicho procedimiento,[5] se estimó que la propiedad tenía un valor en el mercado de $136,600.00. Contrario a lo pactado, el señor Cruz Cruz, en representación de la Sucesión Cruz Cruz, le indicó a la señora González Román que no estaba de acuerdo en venderla por ese precio, pero sí en $140,000.00. A todas luces, la Sucesión Cruz Cruz incumplió con lo pactado.

En el ámbito de las obligaciones y contratos es una doctrina fundamental que cuando los términos de un contrato son claros, y no dejan lugar a dudas sobre la intención de los contratantes, no cabe recurrir a reglas de interpretación. Art. 1233 del Código Civil; Residentes Parkville Sur v. Díaz Luciano, res. el 28 de abril de 2003, 2003 TSPR 69; Trinidad v. Chade, res. el 18 de enero de 2001, 2001 TSPR 7. Sabido es, también,

---

[4] En lo pertinente, la cláusula "F" del contrato objeto de litigio establecía que:

> "F) Si en el futuro los arrendadores decidieran vender la propiedad arrendada convienen estos en dar la primera opción de compra a la arrendataria. **El precio de venta en dicha eventualidad será el que establezca un tasador escogido por ambas partes...**"

[5] Es preciso señalar que la tasación se efectuó, tal y como lo exigía el contrato, entiéndase dentro del termino de seis meses de celebrado el mismo.

que a partir del perfeccionamiento de un contrato, las partes quedan obligadas al cumplimiento de lo expresamente pactado y a las consecuencias que se deriven del mismo, ello conforme a la buena fe, al uso y a la ley. Art. 1210 del Código Civil , 31 L.P.R.A. sec. 3375. Trinidad v. Chade, *supra.* En virtud de esta normativa, la obligación de la Sucesión Cruz Cruz, según se desprende claramente de la cláusula "F" del referido contrato, era vender la propiedad al precio de tasación. No lo hicieron.

Ahora bien, la Sucesión Cruz Cruz entiende que las negociaciones llevadas a cabo por las partes con posterioridad al otorgamiento del referido contrato-- en las que la señora González Román aceptaba el precio si se le hacían ciertos arreglos y mejoras sustanciales a la propiedad-- extinguieron las obligaciones derivadas de la cláusula "F" por lo que no está obligada a cumplir con la cláusula que le otorga el derecho de tanteo a la señora González Román. No le asiste la razón. No estamos ante un caso en que ambas partes—la señora Román González y la Sucesión Cruz-- hayan expresado inequívocamente su deseo de que dicha obligación quede extinta o hayan pactado una nueva obligación que resultare de todo punto incompatible con la original.

**Las conversaciones habidas entre la señora González Román y la Sucesión Cruz Cruz no novaron la obligación**

**de vender la propiedad al precio de tasación, pues para que esto suceda es requisito indispensable la voluntad manifiesta de todas las partes para extinguir la obligación y sustituirla por una nueva**. United Surety v. Bayamón Steel Processors, Inc., res. el 13 de abril de 2004, 2004 TSPR 56; Warner Lambert Co. v. Tribunal Superior, 101 D.P.R. 378, 389 (1973); Caribe Lumber Corp. v. Marrero, 78 D.P.R. 868, 875-876 (1955). Ello es así pues la novación nunca se presume, sino que ha de ser acreditada sin género alguno de duda. Warner Lambert Co. v. Tribunal Superior, *supra*. La novación en su modalidad extintiva es siempre una cuestión de intención y ésta debe inferirse de las circunstancias que rodean cada caso en particular. La doctrina puntualiza el elemento de la voluntad de las partes como determinante de la novación.

La Sucesión Cruz Cruz nunca aceptó realizar los cambios que le propuso la señora González Román. Por tanto, al no concurrir la voluntad de ambas partes para extinguir la obligación original, no cabe hablar de una novación extintiva que releve a la Sucesión Cruz Cruz de responderle por lo pactado a la señora González Román.

Al no haber operado la novación, la Sucesión Cruz Cruz venía obligada a cumplir con lo pactado en el contrato de arrendamiento. Como no lo han hecho, conforme dispone el Art. 1077 del Código Civil, 31 L.P.R.A. sec. 3052, la señora González Román puede

escoger entre exigir el cumplimiento o la resolución de la obligación, más el resarcimiento de daños —de probarse en su día que los sufrió— y el abono de interés en ambos casos.

## V.

Por los fundamentos expuestos en la Opinión que antecede, se revoca el dictamen emitido por el Tribunal de Apelaciones. Se devuelve el caso al foro de instancia para la continuación de los procedimientos de manera compatible con lo aquí resuelto.

Federico Hernández Denton
Juez Presidente

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Zaida L. González Román

     Peticionaria

                         CC-2003-979     Certiorari

        v.

Sucesión Cruz Cruz

     Recurrida

SENTENCIA

San Juan, Puerto Rico, a 10 de diciembre de 2004.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte integral de la presente, se revoca el dictamen emitido por el Tribunal de Apelaciones. Se devuelve el caso al foro de instancia para la continuación de los procedimientos de manera compatible con lo aquí resuelto.

Así lo pronunció, manda el Tribunal y certifica la Subsecretaria del Tribunal Supremo. El Juez Asociado señor Fuster Berlingeri concurre sin opinión escrita. El Juez Asociado señor Rivera Pérez disiente sin opinión escrita.

                          María I. Colón Falcón
                 Subsecretaria del Tribunal Supremo