GERARDO BALDRICH y JOSÉ G. SALGADO, recurrentes, *v.* EL REGISTRADOR DE LA PROPIEDAD DE RÍO PIEDRAS, recurrido.

Número 1302.
*Sometido:* 1 de febrero de 1954. *Resuelto:* 29 de diciembre de 1954.

---

[2] El acusado nada dice en su alegato con referencia a la sentencia en el caso de acometimiento grave.

*Harry M. Besosa,* abogado de los recurrentes; el Registrador recurrido compareció por escrito; *Rafael R. Fuertes, Guillermo Díaz Díaz* y *Augusto Burgos Mundo,* abogados de la Junta de Planificación, ésta como *amicus curiae.*

EL JUEZ PRESIDENTE SEÑOR SNYDER emitió la opinión del Tribunal.

De acuerdo con una certificación del Registrador de la Propiedad de Río Piedras, los dueños de una urbanización en la barriada Hato Rey, denominada Reparto Baldrich, impusieron ciertas restricciones sobre los solares que componen dicha urbanización. Esas restricciones aparecen al margen de la inscripción de los solares que componían la urbanización cuando ésta consistía únicamente de la propiedad descrita como finca núm. 1279. Las referidas restricciones incluyen disposiciones relacionadas con cosas tales como la ubicación en los solares, la altura, el tipo, y el valor de las residencias que allí se construirían. La primera restricción reza como sigue:

"Primera: Todos y cada uno de los solares que componen dicha finca denominada 'Reparto Baldrich' se dedicarán exclusivamente para la construcción de residencias con excepción de los solares marcados con los números 1, 2, 3, 4, 5 y 6 que forman la manzana A la cual ha sido reservada para el área comercial de la misma; prohibiéndose, sin embargo, que en dicha área se construyan edificios para dedicarlos a hospitales, clínicas, policlí-

nicas, dispensarios y empresas funerarias o cualquier otro negocio de igual o similar naturaleza; y además los solares marcados con los números 201 y 202 de la manzana K, los cuales han sido reservados para la construcción de un 'Club House'." [1]

Indica la certificación del Registrador que dicha inscripción marginal termina de la siguiente manera: "Así resulta de las escrituras sobre imposición de condiciones restrictivas y actas aclaratorias nums. 15, 18 y 39, de fechas 20 de febrero, 4 de marzo y 16 de abril de este año, otorgadas en Río Piedras, ante el notario Emilio Rodríguez, presentadas a las 8 y 45 de la mañana del día 25 de marzo pasado, asiento 153 Diario 243. San Juan, abril 25, 1946."

En 1953 los dueños de los solares núms. 201 y 202 radicaron un documento solicitando del Registrador que cancelara mediante nota al margen de la inscripción de la finca núm. 1279 ". . . la mención que aparece en dicha inscripción de que las parcelas núms. 201 y 202 del mencionado Reparto Baldrich han sido reservadas para la construcción en ellas de un *club house.*" Este documento expone como motivos para dicha solicitud los siguientes: (1) dicha mención no implica derecho real de clase alguna, o sea, de los taxativamente enumerados en el art. 2 de la Ley Hipotecaria; a saber, dominio, usufructo, uso, habitación, enfiteusis, hipoteca, censo y servidumbre; (2) la reserva a que se hace mención en dicha inscripción a lo sumo implica una simple prerrogativa de carácter personal; (3) los derechos que no sean de la clase de los reales, aunque aparezcan mencionados en los Registros, no surten efectos hipotecarios y deben considerarse como no inscritos conforme preconiza la doctrina hipotecaria y los casos de *Rullán* v. *Registrador,* 67 D.P.R. 702, y *López* v. *Registrador,* 67 D.P.R. 962; (4) en los planos de inscripción referentes al Reparto Baldrich, aprobados por la Junta de Planificación e inscritos en el Registro, no figura que los solares núms. 201 y 202 del referido Reparto hayan sido dedicados,

---

[1] *Nos hemos abstenido de traducir el término* club house *en la versión en español de esta opinión a fin de no tener que pasar sobre cuestiones que no están ante nos. Alicea* v. *Registrador,* 71 D.P.R. 592.

reservados, o designados para la construcción en ellos de un *club house* o edificio de clase determinada.

El Registrador denegó dicha solicitud por dos motivos. "Primero: Porque dicha cancelación pudiera perjudicar derechos de otras personas que adquirieron y poseen solares en esa Urbanización con el conocimiento de que en dichos solares, doscientos uno y doscientos dos se construiría un *Club House;* Segundo: Porque a los efectos del Registro, por lo menos debiera obtenerse para esta cancelación la aprobación de la Junta de Planificación de Puerto Rico . . .". Contra la nota del Registrador los recurrentes instaron el presente recurso. Concedimos la solicitud de la Junta de Planificación para comparecer como *amicus curiae,* y la Junta y el Registrador radicaron conjuntamente un alegato.

 Los recurrentes están en lo cierto en cuanto a que la inscripción en el registro de la propiedad de un derecho puramente personal puede cancelarse a solicitud del dueño del inmueble que resulte afectado. *López* v. *Registrador*, supra; *Rullán* v. *Registrador*, supra; art. 28 del Reglamento para la Ejecución de la Ley Hipotecaria; III Roca Sastre, Derecho Hipotecario, 352, 361; II id., 213, 190–1, 202; II Castán Tobeñas, Derecho Civil Español, Común y Foral, 7. También estamos de acuerdo con los recurrentes en cuanto a que no podemos tomar en consideración en este caso anuncios publicados en periódicos sobre la venta de solares en el Reparto Baldrich—presentados por la Junta y el Registrador como "exhibits" de su alegato—conteniendo las siguientes manifestaciones: "También se ha reservado suficiente terreno, donado por el Reparto Baldrich a sus residentes, para la construcción de un 'country club'." Tal manifestación en anuncios en periódicos desde luego no es inscribible en el Registro y no puede por supuesto tomarse en consideración por el Registrador o por nosotros en este recurso. II Roca Sastre, supra, 19; *Collazo* v. *Registrador*, 55 D.P.R. 445; *Graciani* v. *El Registrador*, 25 D.P.R. 44; *Infanzón & Rodríguez* v. *El*

*Registrador*, 24 D.P.R. 141.(²) Sin embargo, no podemos convenir con los recurrentes en que la "reserva" de los solares núms. 201 y 202 para un *club house* no es un derecho real a favor de los demás solares que componen el Reparto Baldrich.

■■ Arguyen los recurrentes que el contexto de la primera restricción que se refiere a los solares núms. 201 y 202 establece una ventaja en beneficio de los dueños de dichos solares y no una restricción en el uso de dichos solares; v. g., que dichos solares pueden usarse libres de las restricciones sobre los otros solares más un derecho personal—o, a lo sumo, una obligación personal—para construir un *club house* en ellos. No estamos de acuerdo. Creemos que tal como se usaron en el contexto de la cláusula primera "reservados" significa "restringidos" y que de acuerdo con los términos de la cláusula primera tanto el área comercial "reservada" como el área "reservada" para *club house* pueden usarse solamente para fines comerciales y de *club house*, respectivamente, para el beneficio mutuo de todos los solares que componen el Reparto Baldrich. Sin lugar a dudas, un dueño determinado de uno de dichos solares podría tomar la disposición en cuanto al uso comercial—y hasta recreativo—como una ventaja para sí mismo. Pero el factor determinante para nuestros fines es que al margen de la inscripción de una escritura agrupando cierto número de solares para formar una urbanización denominada Reparto Baldrich se inscribió una serie de restricciones sobre todos los solares para su beneficio mutuo. Estas restricciones incluían la "reserva" de ciertos solares para usos comerciales que no estuviesen taxativamente prohibidos, y la "reserva" de los solares núms. 201 y 202 para un *club house*. Los solares restantes estaban restringidos a uso residencial. Desde el punto de vista de los dueños de estos últimos—que pudieran desear facilidades comerciales y recreativas en la urbanización—las restricciones sobre los solares de la man-

---

(²) Por igual motivo dejamos a un lado otra afirmación en dichos anuncios que dice así: "Sección separada para zona comercial donde se construirá un teatro, colmado, farmacias y demás negocios indispensables."

zana A y sobre los solares núms. 201 y 202 para fines comerciales y de un *club house*, respectivamente, serían beneficiosas para sus solares residenciales. De ahí que, desde su punto de vista, las restricciones de uso tanto en cuanto a los solares comerciales como en cuanto a los solares núms. 201 y 202 son derechos reales—siendo sus solares los predios dominantes y los solares comerciales y para el *club house*, respectivamente, los sirvientes—que están debidamente inscritos en el registro de la propiedad. Véanse *Santaella* v. *Purón*, 60 D.P.R. 552; *Lawton* v. *Rodríguez Rivera*, 35 D.P.R. 487; *Fiol* v. *López de la Rosa*, 46 D.P.R. 749; art. 2, párrafo 2 de la Ley Hipotecaria; arts. 27 y 75 del Reglamento para la Ejecución de la Ley Hipotecaria; III Roca Sastre, supra,. pág. 353. *Cf. Capella* v. *Carreras*, 48 D.P.R. 830; *Figueroa* v. *Guerra*, 69 D.P.R. 607; 19 Rev. Jur. U.P.R. 47, 52–3. (³)

■ Salvo un derecho hipotecario, la inscripción es sólo declarativa y no es fuente de derechos. I Roca Sastre, supra, págs. 150–1, 153; III—1 Enneccerus, Kipp y Wolff, Tratado de Derecho Civil, 210; Sentencia del Tribunal Supremo de España de 21 de febrero de 1947. Pero no podemos convenir con los recurrentes que este principio nos obliga a revocar la nota del Registrador en este caso. Por el contrario, como hemos visto, la certificación del Registrador en relación con la inscripción al margen de la finca núm. 1279 dice que las restricciones sobre los solares que componen el Reparto Baldrich ". . . resulta[n] de las escrituras sobre imposición de condiciones restrictivas y actas aclaratorias . . ." otorgadas y presentadas para inscripción. No es éste por lo tanto un caso en que el Registrador sostiene que el Registro es la fuente del derecho real aquí envuelto. Más bien los dueños

---

(³) Los apelantes citan—en apoyo de su contención de que la disposición para el uso de los solares núms. 201 y 202 para un *club house* es una ventaja que permite un uso adicional y no una restricción—de la pág. 7 del Boletín de Divulgación núm. 1, expedido en agosto de 1945, por la Junta al efecto de que en un distrito sujeto a menores restricciones, como ·un distrito comercial, se permiten el uso y la construcción de residencias. No podemos convenir en que esto tenga algún efecto sobre la restricción privada aquí envuelta.

de la parcela—que se convirtió en el Reparto Baldrich y de la cual se segregaron los diferentes solares del mismo—crearon mediante escritura restricciones, que fueron luego inscritas, en cuanto al uso de los solares núms. 201 y 202 como el predio sirviente para beneficio de los solares restantes en el Reparto Baldrich como el predio dominante.

El Registrador y la Junta citan en su alegato como una supuesta restricción adicional en este caso, la siguiente: "Undécima:—Las anteriores restricciones han sido impuestas como un gravamen sobre la propiedad antes descrita y se ha tomado nota de ello en el Registro de la Propiedad, a fin de que con cada venta que se efectúe o trasmisión de derechos con relación a los solares procedentes de la urbanización Reparto Baldrich, se le imponga la obligación de respetar las referidas restricciones, que se mencionan en el hecho segundo de esta escritura."

Tal cláusula no se incluye en la certificación del Registrador. Por lo tanto de ordinario no debemos considerarla aquí. Sin embargo, en su alegato de réplica los recurrentes no niegan su existencia. Solamente arguyen (1) que la frase "las anteriores restricciones" se refiere a solares con excepción de los núms. 201 y 202 que, según los recurrentes, están excluídos de las restricciones por las disposiciones de la cláusula primera, y (2) que las restricciones ". . . que se mencionan en el *hecho segundo* de esta escritura . . ." no incluyen ni pueden incluir las disposiciones de la cláusula *primera*. En cuanto al número (1), ya hemos indicado que no estamos de acuerdo y que interpretamos la cláusula primera como que impone restricciones sobre el uso de los solares núms. 201 y 202. En cuanto al número (2), ". . . el hecho segundo de esta escritura . . ." de su faz no se refiere a la cláusula primera de las restricciones que se encuentran inscritas al margen de la inscripción de la parcela núm. 1279; más bien, aparentemente se refiere a un documento distinto—una escritura de la cual no hay copia en los documentos ante nos en este procedimiento y en la cual, aparentemente, se mencionaban en su "hecho

segundo" todas las restricciones sobre los solares que componen el Reparto Baldrich. Suponiendo que podamos tomar la cláusula Undécima en consideración por referirse ambas partes a ella, creemos que sostiene la posición del Registrador y de la Junta más bien que la de los recurrentes. En todo caso, al resolver este recurso descansamos principalmente en la certificación del Registrador sobre las restricciones inscritas al margen de la finca núm. 1279.

Los recurrentes descansan en parte en el hecho de que en el plano de inscripción en cuanto al Reparto Baldrich, aprobado por la Junta de Planificación, como aparece inscrito en el Registro, no hay indicación de que exista restricción alguna sobre los solares núms. 201 y 202. Si dicho plano hubiese demostrado que los solares núms. 201 y 202 habían sido separados de antemano para construir en los mismos un *club house*, su inscripción podría robustecer la posición del Registrador. Pero el haber dejado de indicar este hecho en el plano general aprobado por la Junta, por sí solo, no elimina la inscripción de dicha restricción con respecto a los solares núms. 201 y 202 al margen de la inscripción de la escritura de la finca núm. 1279.

Se dispusieron usos mutuos y restricciones sobre los solares que se crearon para componer la urbanización denominada Reparto Baldrich. Dichas disposiciones tenían el loable objetivo de proveer un plan de áreas residenciales, comerciales y recreativas en la urbanización.[4] Tales res-

_____

[4] Escribiendo en otro contexto, el Tribunal Supremo de los Estados Unidos recientemente señaló la importancia de la planificación para toda una zona. En el caso de *Berman* v. *Parker*, 348 U. S. 26, (1954), dijo a la pág. 34: "Era de importancia volver a diseñar toda el área para eliminar las condiciones que motivan arrabales—el hacinamiento en viviendas, la falta de parques, la falta de calles y vías adecuadas, *la falta de áreas recreativas*, la falta de luz y aire, la presencia de sistemas de calles anticuados. Se creyó que el enfoque de este asunto por partes, la remoción de estructuras individuales desagradables, sería meramente un paliativo. Toda el área necesitaba que se diseñara de nuevo de manera que pudiera desarrollarse un plan integral balanceado para la región, que incluyera no sólo casas nuevas sino también escuelas, iglesias, parques, calles y centros comerciales. Se esperaba poder así controlar el ciclo de deterioro del área y evitar que surgieran nuevos arrabales." (Bastardillas nuestras.)

tricciones, en cuanto a lo que surge del presente récord, eran permisibles como cuestión de derecho y su inscripción procedía en el Registro como derechos reales a favor de los predios dominantes y en contra de los sirvientes. Si una de estas disposiciones—que deberían usarse los solares núms. 201 y 202 para un *club house*—fuera a ser modificada, debería hacerse mediante un método que no fuera una petición ex parte radicada por los dueños de los solares núms. 201 y 202 solicitando la cancelación de la inscripción marginal de la parcela original en cuanto a tal uso. La cuestión de si los recurrentes pueden obtener la cancelación de la restricción en cuanto al uso de los solares núms. 201 y 202 mediante el consentimiento de los dueños de los demás solares del Reparto Baldrich o por algún procedimiento plenario no está ante nos y no la comentamos.

Los recurrentes arguyen que el Registrador erró al dar como su segundo motivo para denegar la inscripción de la cancelación de que se trata que ". . . a los efectos del Registro, por lo menos debiera obtenerse para esta cancelación la aprobación de la Junta de Planificación de Puerto Rico . . .". El único argumento que se hace en el alegato de la Junta y del Registrador en apoyo de dicho segundo motivo lee así:

"Los hechos del caso no son suficientes para nosotros establecer con claridad la posible necesidad de una aprobación por parte de la Junta de Planificación. Creemos, no obstante, que en este caso, a pesar de que la Junta de Planificación no fué parte directa, la eliminación de un uso determinado específico puede resultar de interés para ella, desde el punto de vista general, y entonces sí sería una parte necesaria, como resulta serlo en los casos de caseríos construídos con fondos federales debido a la particularidad de que hay la necesidad de garantizar ciertos usos determinados que el Estado confía a la Junta. En cuanto al presente recurso, la Junta puede considerarse afectada en tanto en cuanto los propios querellantes tienen radicado un caso ante ella y basan su solicitud en la referida reserva de que esos solares han sido dedicados para la construcción de un *Club House*. El caso en cuestión aún no ha sido resuelto por la Junta e indudablemente que las restricciones deben ser consideradas en cuanto al mismo."

No podemos convenir con este argumento del Registrador y de la Junta. Como hemos visto, no citan disposición alguna de la Ley Hipotecaria o de cualquier otro estatuto que exija la aprobación de la Junta si la cancelación aquí solicitada por los recurrentes fuera de otro modo permisible bajo la Ley Hipotecaria. Por los motivos expuestos en el texto de esta opinión que procede al escolio 2, no podemos tomar en consideración en este procedimiento las manifestaciones del alegato del Registrador y de la Junta que no aparecen en el Registro al efecto de que los recurrentes han radicado un caso ante la Junta, que aún está pendiente, solicitando permiso para usar los solares núms. 201 y 202 para un *club house*. (⁵) Es más, aún si estuviese ante nosotros el hecho de que la Junta tiene ante sí tal caso, no conocemos estatuto o reglamento alguno que exija la aprobación de la Junta para la cancelación de la disposición en el Registro en cuanto al uso de estos solares para *club house*. El art. 16 del Reglamento de Planificación núm. 4, adoptado el 1 de mayo de 1946—y su derogación posterior—no tuvieron efecto alguno sobre el problema ante nos. Véase el escolio 3 de esta opinión. (⁶) Por consiguiente el Registrador erró al dar como su segundo motivo para denegar la inscripción de la cancelación aquí envuelta que para poder inscribir dicha cancelación era necesaria la aprobación de la Junta de Planificación.

*Por los motivos expuestos, la nota del Registrador será confirmada.*

---

(⁵) El Registrador y la Junta dicen en su alegato que el 31 de diciembre de 1952 los recurrentes radicaron una petición ante la Junta de Planificación solicitando permiso para construir un *club house* en los solares núms. 201 y 202; que dicha petición pende aún ante la Junta; y que la petición hace constar que estos solares ". . . aparecen reservados en el Registro de la Propiedad para dedicarlos al uso y edificación de un *Club House*."

(⁶) El art. 16, mientras estuvo en vigor, leía así: "Cuando las disposiciones de este Reglamento resultaren en conflicto con cláusulas o limitaciones de convenios o contratos privados relacionados con aspectos de zonificación, regirán las más restrictivas."

Opinión disidente del Juez Asociado Sr. Belaval.

Aunque estoy conforme con la discusión que en el presente caso se hace, sobre el carácter real de las restricciones, no estoy conforme con la discusión que sobre el segundo fundamento de denegación de inscripción del señor Registrador de la Propiedad contiene la presente opinión. Da la impresión de que el recurrente se queda sin remedio para lograr la reclasificación de los solares 201 y 202 de la manzana K, los cuales fueron reservados por el urbanizador para la construcción de un "club house". Si el urbanizador se hubiere comprometido a construir dicha casa de recreo, en favor de los compradores de los solares, estaríamos ante una situación distinta. Pero el urbanizador lo único que hace es reservar dos solares para uso de una casa de recreo. Es lógico suponer, que en este último caso, cualquiera conversión del uso de dichos dos solares, debe plantearse de nuevo ante la Junta de Planificación.

Partiendo de la base que los compradores de solares tengan algún derecho que alegar contra la conversión del uso de dichos dos solares, contrario al derecho del urbanizador, debe ser la Junta de Planificación, como representante del interés público, o como organismo administrativo autorizado por ley, para aprobar los planos de la urbanización, la que retenga poder, para poder ordenar la conversión del uso y la reclasificación de dichos solares, previa audiencia a todos los interesados.